# CHARLESTON.

STATE *v.* PISCOINERI *et al.*

Submitted March 31, 1910. Decided October 25, 1910.

1. INDICTMENT AND INFORMATION—*Joinder of Offenses—Election.*
    If different counts in a felony indictment charge separate. and distinct offenses, and are inserted therein for the purpose of meeting the varying phases of evidence relative to the same criminal transaction, the proscuting attorney will not be required to elect as to the count on which he will proceed to trial.

2. CRIMINAL LAW—*Connivance to Entrap Offenders—Effect.*
    Where one offended against waives none of his rights, and. the offender alone is responsible for the criminal intent, the nature or quality of the offense will not be affected by the fact that the party offended against connived at the offense or assisted the offender for the purpose of entrapping and convicting him of the crime.

3. CONSPIRACY—*Conspiracy to Take Property by Force or Threat Against the Owner's Consent—"Red Men's Act".*
    The so-called. Red Men's Act, being Code 1906, chapter 148, sections 9 and 10, contemplates the taking of property by force or threats and against the owner's consent, in pursuance of a conspiracy for the purpose, and applies to any taking of that character.

4. CRIMINAL LAW—*Writ of Error—Review—Verdict on Conflicting Evidence.*
    The verdict of a jury deduced from conflicting evidence and involving judgment as to the credibility of witnesses only will

not be disturbed upon writ of error on the ground that it is contrary to the evidence.

Error to Circuit Court, Marion County.

Frank Piscioneri and others were convicted of Black Hand practices, and they bring error.

*Affirmed.*

*Howard N. Ogden,* for plaintiffs in error.

*William G. Conley,* Attorney General, and *Frank Lively,* Assistant Attorney General, for the State.

ROBINSON, PRESIDENT:

Frank Piscioneri and eighteen others, all natives of Italy, were indicted and put on trial, jointly, for alleged Black Hand practices. Nine of the accused were convicted of a felony and sentenced to ten years imprisonment in the penitentiary. The others, ten in number, were convicted of a misdemeanor. All those convicted of a felony, being Piscioneri and eight others, and one of those convicted of a misdemeanor, Joe Ferraro, have prosecuted this writ of error.

The charge was brought against these nineteen men by an Italian youth named Berardelli. A narrative of the evidence would make interesting reading along the line of the modern detective story. But no proper purpose will be served here by mere entertainment of this kind. It will suffice to refer to such facts only as need be mentioned for an intelligible disposition of the various assignments of error.

Originally the indictment contained five counts. The first three were quashed, leaving the trial to proceed upon the fourth and fifth counts. When all the evidence was adduced, and before the jury retired, the prosecuting attorney asked for a verdict on the fifth count only. And it is on this count alone that the judgment of conviction rests. The offense therein charged is that provided against by Code 1906, chapter 148, sections 9 and 10, commonly known as the Red Men's Act. In this count it was returned by the grand jury, in substance, that the defendants, at a stated time, in the county of Marion, did feloniously and unlawfully combine and conspire with each other and among themselves, under the name of Black Hand, for the purpose of stealing, taking and carrying away certain

specifically named personal property, of a specifically named value, not their own nor the property of either of them, but of the property of Berardelli, and that in pursuance of such combination and conspiracy the defendants then and there feloniously did steal, take and carry away the property aforesaid. This charge is directly within the terms of the statute upon which it is founded. The motion to quash the fifth count was properly overruled. The assignment of error in this particular is not well taken.

The court did not err in refusing to compel the prosecuting attorney to elect whether the trial should be had upon the fourth or the fifth count of the indictment. The fourth count charged that the defendants combined and conspired with each other and among themselves, under the name of Black Hand, for the purpose of inflicting punishment and bodily injury upon Berardelli, and that in pursuance of such combination and conspiracy they did inflict punishment and bodily injury upon him, by wounding him with intent to maim, disfigure, disable, and kill him. But the prosecuting attorney introduced no evidence tending to establish the act of felony alleged in this fourth count—the infliction of punishment or bodily injury in pursuance of a combination or conspiracy for the purpose. The evidence introduced on behalf of the state fitted the fifth count only, and the prosecuting attorney elected to rely on that count alone, and so announced before the case went to the jury. The defendants were not made to meet two distinct accusations; they were made to meet the one proved. Plainly these two counts were inserted in the indictment for the purpose of covering the varying phases of the same alleged criminal transaction. "It is every ·day's practice to charge a felony in different ways in several counts, for the purpose of meeting the evidence as it may come out in the trial; each of the counts on the face of the indictment purports to be for a distinct and separate offense, and the jury very frequently find a general verdict on all the counts, although only one offense is proved; but no one ever supposed that formed a ground for arresting the judgment. If the different counts are inserted in good faith, for the purpose of meeting a single charge, the court will not even compel the prosecutor to elect." *Kane* v. *The People,* 8 Wend. 211; *State* v. *Smith,* 24 W. Va. 814.

The assignment of error in relation to the admission and re-

fusal of evidence is a general one only. It does not point out
the alleged erroneous rulings of the court. Nor is our attention
directly called by bill of exceptions or brief to any particular
alleged erroneous ruling in this regard. We are only referred
by the assignment generally to the stenographer's transcript. To
find error, if it exists, we must search through the mass of tes-
timony and pass upon every objection and ruling therein noted.
Ordinarily we would not do so. "The particular evidence must be
specified out of the great mass." *State* v. *Bingham,* 42 W. Va.
234. Most appropriately could we observe this rule in the case
at hand. Since no argument has been presented or direct ref-
erence made to any ruling in the matter of admitting or refus-
ing evidence, well could we assume that no error in this behalf
exists and that the assignment is abandoned. But in view of
the grave character of the case and the unusual number of per-
sons whose liberties are affected we have examined each of the
rulings throughout the transcript of the evidence. No error
is observed. Wisdom, caution, regard for the rights of those
on trial, appear to have been exercised by the learned trial judge
at every stage.

The motion made at the close of the introduction of the
State's evidence to exclude that evidence and to direct a verdict
of not guilty was properly overruled. The allegations of the
fourth count of the indictment were proved. A case had been
made by the State. But at any rate defendants did not choose
to rely on this motion. They waived it by introducing evidence
in their behalf. They cannot, therefore, rely upon it here, and
assign the action of the court thereon as error.

It is submitted that the two instructions requested by the
State should not have been given, because, it is said, there was no
evidence of the alleged conspiracy or combination upon which
to base them. Evidence tending to establish such conspiracy
and combination had been adduced. The statute itself pro-
nounces a rule of evidence applicable in this particular. Code,
ch. 148, sec. 10. We perceive no error in the giving of these
instructions.

The two instructions requested by defendants were not war-
ranted and were properly refused. These proposed instructions
were counter to the following sound propositions of law: "When
a party has formed a guilty intent to commit a crime, any person

may furnish opportunities, or even lend assistance to the criminal, with the commendable purpose of exposing or punishing him. Where the prosecutor waives none of his rights, and simply aids an offender, or connives at his offense for the purpose of entrapping and convicting him of the crime, the nature or quality of the wrongdoer's offense will be in no wise offected." See case note, 81 Am. Dec. 365; 12 Cyc. 160; 1 Bish. Cr. Law, sec. 262; 1 McClain Cr. Law, sec. 118. If defendants committed the crime charged and were in no way procured to commit it, if the guilty intent that caused its commission was at all times their own, then they must answer for the offense, regardless of the trap laid for them. The mere fact that the money taken from Berardelli was marked and furnished to him by the prosecuting attorney, and that defendants were thus entrapped into the hands of officers on the watch, cannot alter the case if defendants at all times were responsible for the guilty intent to commit the crime. And though Berardelli went voluntarily to their meeting place for the purpose of entrapping them, and not, as he says, because of fear that he would be harmed if he did not, the case is the same as long as defendants alone were the originators of the guilty intent to commit the unlawful deed. The refused instructions wholly ignored any premise as to responsibility for the guilty intent. They were properly excluded from the jury.

It is usual practice to return a jury to their room for further consideration of the case when they bring in a verdict that responds to something not within their province. The court did not err in refusing to receive a verdict of misdemeanor on the first count of the indictment. That count had been quashed. It was proper to return them after the pertinent explanation which the court made in the premises. Nor did the court err in directing that the verdict finally brought in be put in proper form. This is ordinary and ancient practice and no good reason has ever been assigned why it should not be followed.

The remaining assignment of error relates to the action of the court in refusing to set aside the verdict as contrary to law and the evidence. The argument on behalf of the defendants is mainly devoted to this point. It is insisted that the so-called Red Men's Act does not apply to the case proved—in short that the evidence does not fit the indictment. This position is not

tenable.   The evidence on behalf of the State tended directly to establish the unlawful conspiracy and the felonious acts proceeding therefrom as alleged in the count upon which the verdict is returned.   We cannot say that the Legislature did not contemplate such a case as the one presented when that case is directly within the terms of the act.   This law must apply to any offense which is described by its language and is within its spirit and purposes.   It must apply whenever a conspiracy or combination for any of the unlawful purposes named is proved, and the felonious act pursuant to that conspiracy or combination and within the scope of the statute is established.   The evidence in this case clearly tended to establish a conspiracy under the name of Black Hand for the purpose of taking and carrying away the money of Berardelli, and the actual taking and carrying away of his money by repeated threats of grave harm, in pursuance of such conspiracy.   Taking Berardelli's testimony as true, and the jury evidently gave it that credence, and considering the corroborating facts and circumstances shown, we find evidence that these defendants confederated together for the purpose of compelling him to join the Black Hand society and to give up to them the sum of thirty dollars, or, as an alternative, to give them twenty dollars, stay out of the society, and keep silent under pain of death.   And there is evidence that certain of the defendants did by insistent threats of bodily harm and even death compel Berardelli to turn over to them the thirty dollars they demanded.   It is shown that those who have been convicted of felony took his money by the force of repeated and insistent threats, by the act of surrounding him at the so-called initiation into the society, and by the exhibition of deadly weapons at that time.   Berardelli says that he was compelled to attend the meeting and to give up the money by fear of death if he did not.   Such a taking of property is by physical force, or at least against the owner's consent.   It is clearly within the Red Men's Act which, it has been held, contemplates a taking of that character.   *State v. Porter*, 25 W. Va. 685.

Lengthy and able argument is made to show that the verdict is contrary to the evidence.   It is such an argument as should properly have been addressed to the jury, as no doubt it was. We cannot overturn the finding of the jury on the evidence, since there was substantial evidence tending to establish the

felony on the part of those convicted of it and the misdemeanor described by the statute on the part of the others. The evidence is conflicting. It is the oral testimony of witnesses. Berardelli is contradicted by the defendants. Yet in striking particulars he is corroborated by other witnesses, some of his own nationality, and by evidential facts and circumstances. The jury were the sole judges of the conflicting testimony. The witnesses were before them. They saw the manners and countenances of those witnesses. They were in a position to judge as to credibility. It was peculiarly the province of the jury to do so. The jury had the right to believe one, if they deemed him alone credible, and to disbelieve others they deemed not credible. We have no legal power to disturb the finding of the jury, since it is deduced from conflicting testimony and involves judgment as to the credibility of witnesses. If there were absolutely no evidence of the crime charged, it would be otherwise. "To set aside a verdict in such a case, approved by a circuit court, would be an abuse of power. Of what force the constitution in its guaranty of a jury trial, if in such case an appellate court can set aside a verdict only because it differs with the jury?" *State* v. *Stowers*, 66 W. Va. 203.

A diligent and careful review of the record fails to disclose that any error has been committed to the prejudice of those on trial. The judgment of conviction and sentence for a felony against Frank Piscioneri and the eight others, and the judgment of conviction and sentence for a misdemeanor against Joe Ferraro, must be affirmed. It will be so ordered.

*Affirmed.*