## CHARLESTON.

### STATE v. CHARLES HURST.

Submitted February 20, 1923.    Decided February 27, 1923.

1. CRIMINAL LAW—*Verdict Unsupported by Evidence, Where Plainly Insufficient, Set Aside.*

    Where the verdict of a jury is wholly without evidence on a point essential to a finding, or the evidence is plainly insufficient to warrant such finding by the jury, the verdict should be set aside and a new trial awarded; this rule applies whether it be a civil or criminal case. (p. 227).

2. HOMICIDE—*Malice, Expressed or Implied, Essential Element of Murder in First or Second Degree.*

    Malice, express or implied, is an essential element of murder in the first or second degree. (p. 228).

3. SAME—*Error to Charge that Verdict of Murder in First or Second Degree May be Returned in Absence of Evidence Showing Malice.*

    Where in a trial upon an indictment for murder there is no evidence showing malice, it is error to instruct the jury that it may find defendant guilty of murder either in the first or second degree. (p. 228).

4. CRIMINAL LAW—*Jury Cannot Arbitrarily Reject Uncontradicted Testimony of Accused in Own Behalf.*

    Defendant in a criminal case has the right to testify in his own behalf, and if he does so, the jury can not arbi-

trarily reject his testimony, especially so where he is not contradicted directly or indirectly by any other witness or by the facts and circumstances in the case as made out by the evidence against him.

5.  Homicide—*Supreme Court Will Remand for New Trial Cases Where Verdict Unsupported by Evidence Returned.*

　　Where in a trial upon an indictment for murder, the defendant makes out a case of self-defense, but the jury without evidence to support it returns a verdict of murder in the second degree, this court on writ of error will not discharge the prisoner, but will reverse the judgment, set aside the verdict and remand the case for a new trial, as the evidence may be different on a second trial.

Error to Circuit Court, Harrison County.

Charles Hurst was convicted of murder in the second degree, and he brings error.

*Reversed and remanded.*

*Law & McCue,* for plaintiff in error.

*E. T. England, Attorney General,* and *R. A. Blessing, Assistant Attorney General,* for the State.

Meredith, Judge:

Charles Hurst was convicted of murder in the second degree for the slaying of Lester Flanigan, and was sentenced to serve fourteen years in the penitentiary. He seeks now to reverse that judgment, chiefly upon the ground that the verdict is unsupported by the law and the evidence in the case.

Defendant does not deny the killing, but invokes the law of self-defense. At the time it occurred, defendant, along with his two sisters and younger brother, resided with their parents near Katylick Run, Harrison County. On the evening of August 12, 1921, defendant with other members of his family were out on the rear porch of the residence. Defendant was sitting on the porch floor near a bench which extended across one end of the porch; his mother, Mrs. Mary Hurst, sat in a rocking chair, her feet resting on or against the banister rail; a sister, Flora, stood in the doorway opening from the kitchen; and a cousin, Mason Hurst, occupied

the bench, with his feet and legs extending over the end of the bench and the edge of the porch. Bertie, another sister, was engaged in the kitchen. It seems that the deceased, Lester Flanigan, and defendant's sister Bertie were engaged to be married and that he customarily visited the Hurst residence in the evenings. On this particular evening, he appeared about 7 o'clock, walking the short distance from his own home in company with defendant's younger brother, Ernest Hurst, aged 14. As to deceased's movements and behavior we are compelled to rely, there being no other evidence, upon the testimony of the defendant's various relatives, already referred to. Coming within a short distance of the Hurst home, he had his companion, Ernest Hurst, remain behind him, and with the announcement that he was going to "kill a fellow down here," picked up a rock which he carried to a point near the house and then threw towards the building. It struck the weather-boarding about four feet from where Mason Hurst was sitting on the bench. Ernest Hurst was the only witness to the actual throwing, the others merely hearing the rock and seeing the deceased immediately appear around the house. His next move was to seize Mason Hurst's legs, hanging over the end of the bench, he then bore down on them and tipped the bench. Upon Mason Hurst's crying out that he was hurting him, deceased replied with an oath that he wanted "to hurt them, I want to break them." He then slapped Mrs. Hurst on the back, remarking "Mrs. I as as mad as hell," upon which he went inside the house to see Bertie, his fiancee. He told her he was mad and worried. It appears that the cause of his anger and worry was the fact that he had loaned a gun, a 22 Colt automatic pistol, to a young fellow named Davis living at O'Neill, which he had unsuccessfully attempted to have returned that day, Davis being away from home when deceased went after it. On the morning of the same day, deceased had told Mrs. Hurst and others of the family that he was going for his gun and that "he was going to have his gun or hell." He told Bertie of his failure to get the weapon, but it nowhere appears that defendant had any knowledge of this circumstance. Deceased and Bertie Hurst agreed that she should return with

him to his home, in preparation for which she went into another room to change her shoes. At this juncture, deceased continued his rough tactics. He slammed the sewing machine lid, or uptipped the machine so that a heavy iron and some other articles fell on the floor, and splintered the panels of one of the doors with his fist. Coming out on the porch, he informed the family there gathered that he was the "best G—— d——d man in the house" and didn't want anyone to bother him; with upraised arm he approached defendant who rose from his sitting position on the floor. With the remark that deceased must have gotten hold of some bad liquor, defendant pushed deceased away with his hand. This movement was repeated. At this, defendant and the four eyewitnesses, Mrs. Hurst, Bertie Hurst, Flora Hurst and Mason Hurst, say that deceased reached around to his hip-pocket as if attempting to get his gun. To protect himself, defendant picked up a paring knife from the bench, which he had been using in repairing his shoes, and without moving from his tracks stabbed deceased in the lower left section of his abdomen. Bertie Hurst jumped partly between the two men when she saw Flanigan reach for his pocket, but she was too late to separate them. The knife blade severed the internal illiac artery and broke off in the body. Flanigan walked and ran a short distance to a bridge over a small stream, where, his strength waning, he fell. Several people, including defendant, gathered around and the wounded man was carried to the home of a neighbor where he died shortly after.

Such, in brief, is the story of the killing as it appears in the record. If the actions of deceased were as detailed, the testimony of the defendant's witnesses that deceased was intoxicated sounds extremely probable. There can be little doubt about that. A significant circumstance in this connection is the fact that deceased's father offered to go down to invite Bertie Hurst to his home that evening, so that she could hear a nephew play the violin, rather than that Lester should go. Deceased was shown by several witnesses to be a drinking man, and had often come to the Hurst home under

the influence of liquor. While there on these occasions members of the Hurst family had often taken his revolver away from him and hid it. Once he was threatening to shoot his toes off. The evidence is convincing that there was no ill-will between deceased and the defendant nor between him and any member of the defendant's family. His marriage with Bertie Hurst was set for September 10th, approximately one month after the killing.

The testimony of two witnesses introduced by the state tending to prove the existence of bad feeling on the part of defendant towards Flanigan is of little probative value. The first of these witnesses, William Hurst, testified that some time during the summer season prior to the killing, the common report was that Flanigan had killed a dog belonging to Dewey Ash, and that defendant had remarked at the time that "he ought" or "had a notion" to kill Lester Flanigan. This evidence is extremely vague, and in addition the witness admits that he did not consider that defendant's remarks were made in serious vein, but rather in a joking manner. The other witness was a negro, Henry Taylor, who stated that some time in July he was picking blackberries near the Katylick road and met the defendant; that when he inquired as to defendant's health, the latter replied: "I am not right," "I am not very good, I am thinking of killing Lester Flanigan." Upon the witness' objection that the law would exact a penalty for such an act, defendant is quoted as saying: "I ain't studying about that, I have plenty of backing." This was the extent of the alleged conversation, no reasons were suggested why defendant should entertain such a purpose, nor does it appear in the slightest way that the killing when it occurred was the result of any such premeditation. The nature of the encounter, the weapon used, all the circumstances belie any suggestion of design on the part of the defendant.

An important element in a case of this kind is the proof of actual fear of bodily harm on the part of the defendant when defending himself. *State* v. *Davis,* 52 W. Va. 224, 43 S. E. 99; *State* v. *Clain,* 20 W. Va. 679. There is ample evidence here on that issue. Defendant was well acquainted

with the deceased, and knew that he possessed an ugly dispo-
sition when intoxicated. It is further shown that deceased
habitually carried at least one, and sometimes two, pistols.
This fact was known to the defendant and all of the Hurst
family. As heretofore stated, it does not appear that defend-
ant knew that one of the guns was in the possession of Davis,
although knowledge of that circumstance would not have
relieved him from fear for his safety. So, when Flanigan
menacingly approached the defendant, and apparently
reached for his pocket, defendant not unreasonably felt that
protective measures were warranted. Mason Hurst, sitting
on the bench a little further away, sought safety in flight, and
did not witness the stabbing.

Despite the evidence which we have outlined, the jury
returned a verdict of murder in the second degree, which was
confirmed by the judgment of the trial court. Can we disturb
that judgment? In answering that question, neither the
defendant's counsel in argument nor this court are oblivious
of the general rule which demands that respect be paid to the
verdicts of juries. No principle is more firmly established
than that where the evidence is sufficiently conflicting to war-
rant a difference of opinion, the verdict of the jury, after
confirmation by the trial court, must prevail, *State* v. *Roberts,*
64 W. Va. 498, 63 S. E. 282; *State* v. *Piscoineri,* 68 W. Va. 76,
69 S. E. 375; *State* v. *Kidwell,* 62 W. Va. 466, 59 S. E. 494;
*State* v. *Statler,* 86 W. Va. 425, 103 S. E. 345. However, this
rule is not to be considered applicable to every case, to every
set of facts and circumstances. Occasionally, owing to in-
fluences not always discernible, a verdict is returned which
under no possible reasonable view of the evidence can be sus-
tained. Though, as has often been said, juries may observe
the witnesses, their actions and general demeanor, it must be
borne in mind also that some evidence of guilt must appear if
a conviction is to be sustained. "Where the verdict of a jury
is wholly without evidence on a point essential to a finding,
or the evidence is plainly insufficient to warrant such finding
by the jury, the same should be set aside and a new trial
awarded." *Vintroux* v. *Simms,* 45 W. Va. 548, 31 S. E. 941.
This doctrine has been often applied in criminal cases.

*Karnes* v. *Commonwealth,* 125 Va. 758, 99 S. E. 562; *Canter* v. *Commonwealth,* 123 Va. 794, 96 S. E. 284; *Stark* v. *Commonwealth,* 116 Va. 1039, 83 S. E. 545; *State* v. *Galford,* 87 W. Va. 358, 105 S. E. 237.

The present case appeals to us as just °such a case. We can not harmonize the verdict with the evidence offered. Malice is an essential element of murder, *State* v. *Douglass,* 28 W. Va. 297; *State* v. *Panetta,* 85 W. Va. 212, 101 S. E. 360, yet no evidence of legal malice is in the record. There is absolutely no evidence of motive, deliberation or premeditation. All the witnesses agree that the act of defendant was solely in self-defense. True, these witnesses are all members of defendant's family, but as said in State v. Galford, supra, the jury can not arbitrarily refuse to consider the testimony even of the defendant himself, "especially when not contradicted directly or indirectly by any other witness and not inconsistent with the facts and circumstances of the case as made out by the evidence against him, but must give it such weight as in their judgment it merits." In our view, the jury here must have wholly disregarded the evidence not only of the defendant, but all the witnesses to the killing.

The state in argument makes much of the fact that defendant in stabbing deceased reached around his sister Bertie. How far around does not appear in the record. Evidently her movement to get between her brother and the deceased was simultaneous with her brother's movement to protect himself. She approached on the right of deceased; the blow was struck on his left. Under these circumstances, his striking "around" her is a mere relative term, and little importance should be attached to that point. Under the evidence as it appears from the present record, defendant's plea of self-defense seems to us to be complete; certainly there is no evidence to support a verdict of murder, and the verdict must be set aside. Under former rulings, we can not discharge the prisoner, as the evidence on a new trial may be different.

There being no evidence to support a verdict either of first or second degree murder, and no evidence whatever of legal malice, it necessarily follows that the state's instructions de-

fining and applying principles applicable to the two degrees of murder and analyzing the presumptions as to the existence of malice are improper and should have been refused. All eight of the instructions offered are thus objectionable.

· The judgment will be reversed, verdict set aside and new trial awarded.

*Reversed and remanded.*