STATE OF WEST VIRGINIA

*v.*

KIM FRANKLIN KNIGHT

(No. 13663)

Decided December 14, 1976.

*Robert B. Black* for plaintiff-in-error.

*Chauncey H. Browning*, Attorney General, *Betty L. Caplan*, Assistant Attorney General, for defendant-in-error.

WILSON, JUSTICE:

At a trial in the Circuit Court of Wood County on June 12, 1975, on a charge of delivering marijuana, the trial court refused to give defendant's proferred instruction on the issue of entrapment on the ground that no evidence of entrapment was offered by defendant. On appeal from his conviction by a jury, the appellant (defendant below) assigns the refusal of this instruction as error. He also assigns as error the trial court's refusal to direct a verdict of acquittal and the trial court's giving of an instruction at the request of the State which appellant contends did not properly define the elements of the offense.

We reverse solely on the trial court's refusal to give an instruction on the issue of entrapment.

A detailed recitation of the evidence is not essential to our consideration of the case. We are not required to determine whether the evidence on the issue of entrapment is strong or weak. The defendant denied the commission of the offense and offered in support thereof his own testimony and that of one other witness. However, there being some evidence elicited during the presentation of the State's case from which a jury could have found that defendant was entrapped into the commission of the crime, we are only required to decide whether a defendant who does not affirmatively present evidence of entrapment but relies on a denial of the commission of the offense may also avail himself of the defense of entrapment based on the State's evidence alone.

This question has not previously been presented to this Court.

A majority of jurisdictions hold that entrapment is not available as a defense when the accused denies the essential elements of the offense.[1] The rationale of the cases so holding is apparently that the law will not countenance the inconsistency involved in combining a claim that defendant did not commit the offense and a claim that he was entrapped into the commission of the very offense which he denied committing. That rule and its rationale is generally proper and adequate, because ordinarily when the crime is denied, the defendant will be unable to establish any evidentiary base for the defense of entrapment.

However, we adopt also the following language of the opinion in *Sears v. United States*, 343 F.2d 139, 143–44 (5th Cir. 1965):

---

[1] For a collection of cases so holding, *See*, Annot., 61 A.L.R.2d 666. *See also*, *United States v. Croxton*, 482 F.2d 231 (9th Cir. 1973).

" ... if the government injects evidence of entrapment into the case, the defendant is entitled to have the jury instructed that if they find he committed the acts charged, they must further consider whether he was entrapped into committing them. ... A criminal defendant should not forfeit what may be a valid defense, nor should the court ignore what may be improper conduct by law enforcement officers, merely because the defendant elected to put the government to its proof. ... "

We specifically limit the application of this exception to the general rule to cases such as the instant one in which the State's case in chief injects evidence of entrapment into the case. *See, United States v. Newcomb*, 488 F.2d 190, 192 (5th Cir. 1974), for the same limitation on the scope of this exception to the general rule.

Under his plea of not guilty, a defendant in a criminal case is entitled to have the jury consider, under proper instructions, every theory of defense to which the evidence or the reasonable inferences to be drawn therefrom may entitle him. There is no need to treat the defense of entrapment as an exception requiring the application of a different rule.

There is seemingly much confusion which has surrounded the development and application of the defense of entrapment. We perceive no reason for this confusion unless it springs from society's sense of moral disquietude in being required to resolve a fundamental conflict which exists when the agents of society encourage and sometimes actually engage in criminal conduct under the guise of preventing or punishing the same or similar criminal conduct of others.

Entrapment is a defense which is most frequently asserted in connection with offenses involving various aspects of vice such as prostitution, gambling, moonshining, illegal whiskey sales and various phases of the drug traffic. Police authorities justify the utilization of the

affirmative trap on the theory that the crimes with which it is customarily associated are crimes which are usually surreptitiously committed involving persons who are not likely to make complaint about the breach of the law which is involved. They say that it is a legitimate device by which they can hope to suppress and punish, at least to some extent, the commission of such offenses which might not otherwise come to their attention. They assert that if the weapon of the affirmative trap were taken away from them, they would not have adequate means of dealing with such offenses.

In recent years, in this country, the spread of the drug traffic accompanied by widespread public disapproval and fear has popularized the "drug bust" and has encouraged police agencies to resort to general use of the affirmative trap. It is obvious from our review of the cases and the scholarship[2] on the subject that the defense of entrapment, which has never been very clearly delineated, is being viewed with increasing skepticism by police officials, prosecutors, judges and juries.

Nonetheless, this Court, beginning with *State v. Piscioneri*, 68 W. Va. 76, 69 S.E. 375 (1910), has long recognized the defense of entrapment.[3] Generally speaking, the defense has been available in this juisdiction when the idea of committing the crime had its genesis in the mind of the entrapping person who then inveigled the accused into the commission of the crime. *See, State v. Jarvis*, 105 W. Va. 499, 143 S.E. 235 (1928). In applying

---

[2]Bancroft, *Administration of the Affirmative Trap and the Doctrine of Entrapment: Device and Defense*, 31 U. Chi. L. Rev. 137 (1964); Donnelly, *Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs*, 60 Yale L.J. 1091 (1951); Rotenberg, *The Police Detection Practice of Encouragement*, 49 Va. L. Rev. 871 (1964); Note, *Entrapment: An Analysis of Disagreement*, 45 Bos. U. L. Rev. 542 (1965); Note, *Entrapment*, 73 Harv. L. Rev. 1333 (1960); Note, *The Serpent Beguiled Me and I Did Eat: The Constitutional Status of the Entrapment Defense*, 74 Yale L.J. 943 (1964).

[3]*Woo Wai v. United States*, 223 F. 412 (9th Cir. 1915), was the first case in which a Federal court recognized the defense of entrapment.

this concept, this Court has distinguished deceptive practices and artifices employed to detect crime from those employed to create crime. *See, State v. Basham,* ___ W. Va. ___, 223 S.E.2d 53 (1976); *State v. Bierce,* 113 W. Va. 649, 169 S.E. 478 (1933); *State v. Hamrick,* 112 W. Va. 157, 163 S.E. 868 (1932); and *State v. Jarvis, supra.*

This Court's adoption of and adherence to the "subjective" or "origin of intent" theory of the defense of entrapment is consistent with the views expressed in the majority opinions in *Sorrells v. United States,* 287 U.S. 435, 77 L.Ed. 413 (1932); *Sherman v. United States,* 356 U.S. 369, 2 L.Ed.2d 848, 78 S.Ct. 819 (1958); and *United States v. Russell,* 411 U.S. 423, 36 L.Ed.2d 366, (1973).

The "subjective" or "origin of intent" test requires submission of the issue of entrapment to a jury.

We should note, however, that a minority in *Sorrells, Sherman* and *Russell, supra,* gave cogent expression to an "objective" test which would treat the defense of entrapment as one of law for the court.

For example, in *Sorrells,* 287 U.S. at 454–55, Mr. Justice Roberts, in urging that the question be treated as one of law for the court, stated:

> "There is common agreement that where a law officer envisages a crime, plans it, and activates its commission by one not theretofore intending its perpetration, for the sole purpose of obtaining a victim through indictment, conviction and sentence, the consummation of so revolting a plan ought not to be permitted by any self-respecting tribunal. Equally true is this whether the offense is one at common law or merely a creature of statute. Public policy forbids such sacrifice of decency."

In *Sherman,* 356 U.S. at 384, Mr. Justice Frankfurter in a concurring opinion joined in by Mr. Justice Douglas, Mr. Justice Harlan and Mr. Justice Brennan, gave

expression to the underlying philosophy of the defense of entrapment in the following language:

"The power of government is abused and directed to an end for which it was not constituted when employed to promote rather than detect crime and to bring about the downfall of those who, left to themselves, might well have obeyed the law. Human nature is weak enough and sufficiently beset by temptations without government adding to them and generating crime."

In urging the "objective" test, as opposed to the "subjective" or "origin of intent" test, Mr. Justice Frankfurter, 356 U.S. at 383, stated:

"Permissible police activity does not vary according to the particular defendant concerned; surely if two suspects have been solicited at the same time in the same manner, one should not go to jail simply because he has been convicted before and is said to have a criminal disposition. No more does it vary according to the suspicions, reasonable or unreasonable, of the police concerning the defendant's activities. Appeals to sympathy, friendship, the possibility of exorbitant gain, and so forth, can no more be tolerated when directed against a past offender than against an ordinary law-abiding citizen. A contrary view runs afoul of fundamental principles of equality under law, and would espouse the notion that when dealing with the criminal classes anything goes."

For these reasons, Mr. Justice Frankfurter found that a jury verdict would not adequately give guidance for official conduct but would only settle a particular case.

This same difference of view was observed in *Russell*.[4] The majority again adhered to the "subjective" test.

---

[4]It is significant that the majority also refused to raise the defense of entrapment to a constitutional dimension. *See also, Hampton v. United States*, 425 U.S. 484, 48 L.Ed.2d 113, (1976).

The minority, in an opinion by Mr. Justice Stewart, joined in by Mr. Justice Brennan and Mr. Justice Marshall, highlighted the problems presented by the "subjective" test and its philosophical inconsistencies in the following language:

> "Moreover, a test that makes the entrapment defense depend on whether the defendant had the requisite predisposition permits the introduction into evidence of all kinds of hearsay, suspicion, and rumor—all of which would be inadmissible in any other context—in order to prove the defendant's predisposition. It allows the prosecution, in offering such proof, to rely on the defendant's bad reputation or past criminal activities, including even rumored activities of which the prosecution may have insufficient evidence to obtain an indictment, and to present the agent's suspicions as to why they chose to tempt this defendant. This sort of evidence is not only unreliable, as the hearsay rule recognizes; but it is also highly prejudicial, especially if the matter is submitted to the jury, for, despite instructions to the contrary, the jury may well consider such evidence as probative not simply of the defendant's predisposition, but of his guilt of the offense with which he stands charged.

> "More fundamentally, focusing on the defendant's innocence or predisposition has the direct effect of making what is permissible or impermissible police conduct depend upon the past record and propensities of the particular defendant involved. Stated another way, this subjective test means that the Government is permitted to entrap a person with a criminal record or bad reputation, and then to prosecute him for the manufactured crime, confident that his record or reputation itself will be enough to show that he was predisposed to commit the offense anyway."
> 411 U.S. at 443–44.

The State and Federal courts which have addressed themselves to the philosophical basis of the defense of entrapment have almost consistently treated the two

tests as mutually exclusive. They have adopted either a "subjective" test which left the validity of the defense to the jury; or they have insisted on the "objective" test which made the defense of entrapment a question for the court. Naturally, the Federal courts have adhered to the "subjective" test. A few State courts have adopted the rationale of the "objective" test.[5]

We see no logical justification for the preservation of an approach to the defense of entrapment which insists that it is either a question for the court or a question for the jury and that the adoption of one test precludes the utilization of the other.

In our opinion, the better rule is one which approves both tests but applies them in a manner consistent with the evidence. *See, State v. Mullen,* 216 N.W.2d 375, (Iowa 1974). Generally, the evidence will merely pose for jury determination the question of whether the design of the crime originated in the mind of the accused or in the mind of the officer or agent. However, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction, then the question is one for the court to resolve without the necessity of submitting the matter to the jury.

Likewise, we see no reason why the evils and abuses envisioned by Mr. Justice Stewart regarding the introduction of "all kinds of hearsay, suspicion and rumor" should be permitted in a case which is one for the application of the "subjective" or "origin of intent" test requiring submission to the jury. The mere fact that an

---

[5]*See, State v. Mullen,* 216 N.W.2d 375 (Iowa 1974); *People v. Turner,* 390 Mich. 7, 210 N.W.2d 336 (1973); *Smith v. State,* 258 Ind. 415, 281 N.E.2d 803 (1972); *Wood v. Commonwealth,* 213 Va. 363, 192 S.E.2d 762 (1972); *McKay v. State,* 489 P.2d 145 (Alaska 1971); and *People v. Benford,* 53 Cal.2d 1, 345 P.2d 928 (1959).

entrapment defense is available to the defendant is no justification for changing our recognized rules of evidence. The first consideration is for the trial court scrupulously to protect the accused in his right to a fair trial while preserving the right of the State to present evidence which is relevant and legally connected with the charge for which the accused is being tried. *See, State v. Ramey,* _____ W. Va. _____, 212 S.E.2d 737 (1975); and *State v. Thomas,* 157 W. Va. 640, 203 S.E.2d 445 (1974).

In this case, we hold that: (1) The defendant did not waive the defense of entrapment by his denial of the commission of the crime; (2) The evidence of entrapment was not so overwhelming as to show, under the "objective" test, monstrous or unconscionable government conduct requiring the court to hold that entrapment was proved as a matter of law; and (3) Under the "subjective" test, the evidence presented on behalf of the State was sufficient to require the trial court to submit the issue of entrapment to the jury under proper instructions.

It was, therefore, error for the trial court to refuse to give an instruction on the defense of entrapment.

We have carefully considered the defendant's assignment of error regarding the refusal of the trial court to direct a verdict in favor of the defendant on the ground that the State had failed to prove that the substance involved was the specific type of marijuana prohibited by the Uniform Controlled Substances Act. *W. Va. Code,* 60A-1-101, *et seq.* We find no merit in that contention in view of the testimony of the police chemist to the effect that the substance in question was Cannabis sativa L. being a mixture of marijuana leaf fragments and marijuana seeds. Even though the chemist admitted that he performed no germination tests on the seeds, his testimony regarding the leaf fragments did bring the substance clearly within the statutory prohibition.

We have also carefully considered defendant's assignment of error regarding the giving of State's Instruction

No. 1 based on his objections that the terms "marijuana" and "transfer" were not defined and that the utilization of the expression "over the age of eighteen" charges a distinct and different offense. We do not find merit in these contentions, it being our opinion that the instructions considered in their entirety adequately defined all material terms, were reasonably related to the evidence and adequately and without confusion apprised the jury of the law with reference to the issues presented for determination by it.

For the reasons set forth in this opinion, we reverse the Circuit Court of Wood County and grant the defendant a new trial.

*Reversed, remanded, new trial granted.*