STATE OF WEST VIRGINIA

*v.*

HAROLD CRAIG HINKLE

(No. 14940)

Decided February 9, 1982.

*Franklin D. Cleckley* for appellant.

*Chauncey H. Browning,* Attorney General, *Silas B. Taylor,* Assistant Attorney General *and Brad Russell, Law Clerk,* for appellee.

HARSHBARGER, JUSTICE:

A drug sale in Morgantown by Hinkle to undercover agent State Trooper Lucas was arranged by a police informant identified as T. C. With T. C. present, Hinkle sold Lucas four ounces of hashish.

At trial Lucas was the only State witness testifying to the sale. Hinkle and his witnesses testified that T. C. urged Hinkle to sell drugs and that Hinkle was reluctant to do so. At the end of the State's case and all the evidence, Hinkle unsuccessfully moved for a directed verdict of acquittal based on his entrapment defense. The issue was submitted to a jury that convicted him.

The crux of Hinkle's argument is that we should hold that entrapment is a burden-shifting defense like insan-

ity and self-defense.[1] We decline his invitation to adopt that rule.

Many federal courts use a bifurcated theory when entrapment is raised:[2] a defendant has the burden to prove government inducement by a preponderance and then the government must prove beyond a reasonable doubt that the defendant was ready and willing to commit the crime. Other courts simply require the government to prove no entrapment beyond a reasonable doubt. *See generally*, Annot., Instructing on Burden of Proof As To Defense of Entrapment in Federal Criminal Case, 28 A.L.R. Fed. 767 (1976 and Supp.).

We wrote about entrapment defenses in *State ex rel. Paxton v. Johnson*, 161 W.Va. 763, 245 S.E.2d 843 (1978), using three syllabus points from *State v. Knight*, 159 W.Va. 924, 230 S.E.2d 732 (1976). A trial judge should direct a verdict for an "entrapped" criminal defendant if reasonable men could not differ that a government agent conceived the plan and procured or directed its execution "in such an unconscionable way that the crime was created by the police." *State v. Cooper*, ___ W.Va. ___, 280 S.E.2d 95, 100 (1981).[3] *Paxton* presented a weaker instance of entrapment than this case.

---

[1] A defendant's evidence that he was insane or defending himself when he committed an act charged to be a crime, if such evidence is sufficient to raise a reasonable doubt about his sanity or about his criminal intent, moves the burden to the prosecution to prove beyond a reasonable doubt absence of "those defenses which, if shown, would constitute an absolute bar to conviction or justification for the crime." *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295, 300 (1979); *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978).

[2] Annot., Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense—Federal Cases, 22 A.L.R. Fed. 731 (1975 and Supp.).

[3] We are reminded of Justice Goldberg's majority opinion in *Haynes v. Washington*, 373 U.S. 503, 519, 83 S.Ct. 1336, 10 L.Ed.2d 513, 524 (1963):

". . . There is no reasonable or rational basis for claiming that the oppressive and unfair methods utilized were in any way essential to the detection or solution of the crime or to the protection of the public. The claim, so often made in the context of coerced confession cases, that the devices employed by the authorities were requisite to

*Paxton* and *Knight* reveal that West Virginia has two coexistent approaches to entrapment defenses. The "objective" test, applied, in *Paxton*, prohibits conviction of a defendant, as a matter of law, when the evidence overwhelmingly shows unconscionable government conduct inducing the crime. This "objective" approach is decided by the Court and makes a directed verdict appropriate.[4]

---

solution of the crime and successful prosecution of the guilty party cannot here be made.

"Official overzealousness of the type which vitiates the petitioner's conviction below has only deleterious effects. Here it has put the State to the substantial additional expense of prosecuting the case through the appellate courts and, now, will require even a greater expenditure in the event of retrial, as is likely. But it is the deprivation of the protected rights themselves which is fundamental and the most regrettable, not only because of the effect on the individual defendant, but because of the effect on our system of law and justice. Whether there is involved the brutal "third degree," or the more subtle, but no less offensive, methods here obtaining, official misconduct cannot but breed disrespect for law, as well as for those charged with its enforcement."

We find the Third Circuit Court of Appeals' opinion in *United States v. Twigg*, 588 F.2d 373 (1978), a persuasive approach to governmental overzealousness or overreacting. In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), predisposition was a bar to a successful entrapment defense (as per plurality opinion), but the concurring justices concluded that police overinvolvement could be so great and outrageous that its bars conviction. *Id.*, at 495, 96 S.Ct., at 1653, 48 L.Ed.2d, at 122. Dissenters argued that offensive police conduct should be the basis for an entrapment acquittal. The Third Circuit, after analyzing Supreme Court law on the subject (by which it is bound, even though we can enlarge upon the rights afforded our citizens by our State Constitution, *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741, 752 (1980)), determined there should be a separate and distinct defense, other than entrapment, for a criminal defendant subjected to police or government agent misconduct. If the government's abuses are great, fundamental fairness and due process should preclude prosecution, regardless of a defendant's predisposition. *See also* Abramson and Lindeman, Entrapment and Due Process in the Federal Courts, 8 Am. J. of Crim. L. 139 (1980).

[4] As we noted in *Knight, supra* 230 S.E.2d, at 735-737, this position has been adopted by several United States Supreme Court Justices and Iowa, Michigan, Indiana, Virginia, Alaska and California courts. *See also Torrence v. State*, 380 So.2d 248 (Miss. 1980); *State v.*

The "subjective" test analyzes a defendant's predisposition to commit a crime and presents a jury question. The government must pass the objective test before the subjective test will be used.

*Paxton* involved multiple solicitations by an informer until the defendant got "tired of being asked." *Paxton, supra* 245 S.E.2d, at 846. Also, the government failed to bring sufficient evidence of defendant's predisposition, to submit the issue to a jury. The informer as well as the officer testified against Paxton. We found entrapment as a matter of law.

Our facts leave even less room for reasonable minds to differ. Hinkle testified that T.C., the informer, started hanging around Hinkle's home and was there three or four days a week; he frequently asked about drugs and whether Hinkle would sell him some; Hinkle always rebuffed these solicitations; money was not an object because T.C. was willing to pay for drugs from his father's life insurance money; and T.C. arranged and participated in the sale to the officer. Hinkle presented character witnesses who testified to his good character and to T.C.'s persistent harassment, inducement, and direction of defendant and others to commit crimes. Defendant had no record of having committed prior narcotics or related offenses.

The State's case was scant. Only Trooper Lucas and a chemist who analyzed the substance, testified. Lucas said that T.C. made all preparatory arrangements for the sale without Lucas' presence or knowledge of how, when or where. T.C. was never instructed about acceptable or nonacceptable behavior in arranging drug sales. Although Lucas knew where T.C. had lived and where his parents lived, he had not attempted to find him again. T.C. was noticeably, and without excuse by the State, absent from the trial.

*Kamrud*, Mont., 611 P.2d 188 (1980); Annot., Modern Status of the Law Concerning Entrapment to Commit Narcotics Offense—State Cases, 62 A.L.R.3d 110 (1975 and Supp.).

When a defendant presents evidence of police conduct amounting to entrapment, and the State fails to rebut that evidence or prove defendant's predisposition to commit the crime charged, a trial judge should direct a verdict for defendant as a matter of law. We are instructed by Georgia's analysis in a similar case, and quote it for guidance:

> He has established the elements of an entrapment defense (Code § 26-905) which, in fact, could be rebutted only by Len Jones [the informer] or the third individual. (See *Hall v. State*, supra, 136 Ga.App. 622 p. 623, 222 S.E.2d 140, where it is held that testimony of an officer denying entrapment is of no rebuttal value where the alleged entrapment is that by an informer outside the officer's presence.) "If the informer's testimony would disprove the defendant's testimony, the State should have produced him. In the absence of some evidence by the State directly contradicting the testimony of [appellant] that he was induced by the informer . . . to make the sales on behalf of the State, the defendant . . . [is] entitled to a judgment of acquittal. *Coleman v. State*, 141 Ga.App. 193 194(2), 233 S.E.2d 42." *Perry v. State*, 143 Ga.App. 227, 228, 237 S.E.2d 705; *Marshall v. State*, [143 Ga.App. 249, 237 S.E.2d 709]; *Harris v. State*, 139 Ga.App. 675, 677, 229 S.E.2d 148; *Hall [v. State*, 136 Ga.App. 622,] 623, 222 S.E.2d 140.
>
> *Hughes v. State*, 152 Ga.App. 80, 83, 262 S.E.2d 245, 248 (1979).

The State's failure to call this informer, or explain his absence, supports an inference that his testimony would not have rebutted defendant's. The most explicit articulation of this rule derives from a United States Supreme Court involuntary confession case. In *Sims v. Georgia*, 389 U.S. 404, 406, 88 S.Ct. 523, 525, 19 L.Ed.2d 634, 636-637 (1967), the Court explained:

> Thus in remanding the case for a hearing on voluntariness we indicated to the State that as the evidence then stood it had failed adequately to rebut petitioner's testimony that he had been

subjected to physical violence prior to his confession. The State had every opportunity to offer the police officers, whose failure to testify had already been commented upon here, to contradict petitioner's version of the events. Its failure to do so when given a second chance lends support to the conclusion that their testimony would not, in fact, have rebutted petitioner's.

*Accord, United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Morei v. United States,* 127 F.2d 827 (6th Cir. 1942); *People v. Strong,* 21 Ill.2d 320, 172 N.E.2d 765 (1961); *State v. Devine,* 554 S.W.2d 442 (Mo. App. 1977); *State v. Harris,* 166 N.C. 243, 80 S.E. 1067 (1914); 1 Wharton's Criminal Evidence (13th Ed.) § 148 (1972); 29 Am.Jur.2d *Evidence* § 180 (1967 and supp.).

The court erred as a matter of law by failing to direct a verdict for Hinkle.

*Reversed.*