292 S.E.2d 615

**STATE of West Virginia**

v.

**Roy ASHWORTH.**

**No. 15376.**

Supreme Court of Appeals of West Virginia.

June 18, 1982.

Jerry Dove, Asst. Atty. Gen., Charleston, for appellee.

J. Strother Crockett, Welch, for appellant.

McHUGH, Justice:

This action is before this Court upon the petition of Roy Ashworth for an appeal from his 1981 conviction in the Circuit Court of McDowell County, West Virginia, of the offense of delivery of marihuana. That conviction arose from an alleged delivery of marihuana by the defendant to an undercover police officer on January 12, 1981. This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel.

On February 17, 1981, a McDowell County grand jury returned a two count indictment against defendants Ashworth and Ricky Hagy. Count one of that indictment stated as follows:

The Grand Jurors of the State of West Virginia, in and for the body of McDowell County, now attending said Court, upon their oaths present that Roy Ashworth and Ricky Hagy on the said 12th day of January 1981 in the said County of McDowell, did unlawfully and feloniously deliver to Dorsey K. Hylton a quantity of marihuana, defined by stat-

ute in West Virginia Code 60A–1–101(n), same being listed as a controlled substance under Chapter 60A, Article 2, Section 204 of the Code of the State of West Virginia, as amended, the said Roy Ashworth and Ricky Hagy not being a person authorized by law to possess and deliver said controlled substance, and in violation of the provisions of Chapter 60A, Article 4, Section 401(a)(1)(ii) of the Code of the State of West Virginia, as amended, against the peace and dignity of the State.

Count two of that indictment charged defendants Ashworth and Ricky Hagy with the unlawful and felonious delivery of lysergic acid diethylamide, a controlled substance pursuant to *W. Va. Code*, 60A–2–204 [1981]. Count two of that indictment, however, is not before this Court in this appeal.

The trial of the defendants Ashworth and Ricky Hagy upon count one of the indictment began on June 1, 1981, and on June 2, 1981, the jury returned the following verdict with respect to defendant Ashworth: "We, the jury, upon the issue joined between the State of West Virginia and the defendant, Roy Ashworth, find the defendant, Roy Ashworth, guilty of delivery of marihuana, as charged in the indictment." Defendant Ricky Hagy was found not guilty.

By order entered on July 15, 1981, the trial judge denied defendant Ashworth's motion to set aside the verdict of the jury. Pursuant to that order, Ashworth was sentenced to a penitentiary term of not less than one year nor more than five years. Pursuant to *W. Va. Code*, 58–5–25 [1931], this Court by order entered on January 6, 1982, granted the motion of defendant Ashworth for leave to move to reverse the final order of the Circuit Court of McDowell County.

Two witnesses testified at the trial of defendants Ashworth and Ricky Hagy. The first witness called to testify was Robert S. White, a police chemist, who identified the substance delivered by Ashworth to the undercover officer as 21 grams of marihuana. The second witness called to testify was Trooper Dorsey K. Hylton, an undercover police officer working in McDowell County during the period in question.

Trooper Hylton testified that in January, 1981, he went to the City of War, McDowell County, West Virginia, for the purpose of conducting investigations relating to controlled substances. In that city he became acquainted with defendant Ashworth. Trooper Hylton testified that on January 12, 1981, he met with Ashworth and Wilbur Austin in a local tavern. Trooper Hylton asked Ashworth where drugs could be acquired, to which question Ashworth referred to Squire, McDowell County, West Virginia.

Trooper Hylton testified that at Ashworth's direction, Trooper Hylton, Ashworth and Wilbur Austin drove that evening in Trooper Hylton's motor vehicle to Squire, where upon their arrival they parked at an establishment known as Tony's Beer Garden. Trooper Hylton and Wilbur Austin remained in the vehicle while Ashworth entered Tony's Beer Garden. Ashworth then returned to the vehicle with Ricky Hagy, both of whom indicated that a person by the name of "Scott" would arrive shortly to sell marihuana. A white motor vehicle then drove into the parking lot at Tony's Beer Garden from which defendant Ashworth physically delivered marihuana to Trooper Hylton. Trooper Hylton then gave Ashworth forty dollars ($40), and Ashworth apparently transferred that money to the person seated in the white vehicle. Trooper Hylton, Ashworth and Wilbur Austin then returned to War. Subsequently, Trooper Hylton mailed the marihuana to Charleston, West Virginia, for analysis.

The principal assertions of defendant Ashworth in this appeal are that (1) the actions of Trooper Hylton constitute entrapment as a matter of law, and (2) the actions of defendant Ashworth as a mere go-between in the transaction in question do not constitute a crime.

I

Defendant Ashworth contends that inasmuch as Trooper Hylton suggested the marihuana transaction at War, provided

the purchase money for the marihuana, and also provided transportation to Squire, an entrapment of defendant Ashworth by Trooper Hylton was shown as a matter of law. We reject that contention, however, and conclude that, under the circumstances of this case, the issue of entrapment was properly submitted to the jury.

In *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the defendant was convicted in federal court of unlawfully manufacturing and processing methamphetamine ("speed") and of unlawfully selling and delivering that drug. In that action, the defendant and others maintained a laboratory in the State of Washington for the illicit manufacture of methamphetamine. A federal undercover agent infiltrated the operation and provided the perpetrators with an essential ingredient to the manufacturing process. The defendant conceded predisposition to commit the offense but asserted that entrapment existed as a matter of law.

Upon appeal from the defendant's conviction, the Court of Appeals in *Russell* held that the conduct of the undercover agent in supplying a scarce ingredient essential to the manufacture of methamphetamine established the defense of entrapment. The United States Supreme Court, however, reversed. Noting that the undercover agent was not the only source the perpetrators had for the ingredient necessary to the manufacture of methamphetamine, the Supreme Court declined to hold that the conduct of the undercover agent was intolerable or overzealous. Rather, the court in *Russell* reaffirmed the principle that a defendant's predisposition to commit the crime, rather than the type and degree of government conduct relating to that crime,

constitutes the essential element of the defense of entrapment. 411 U.S. at 433, 93 S.Ct. at 1643, 36 L.Ed.2d at 374.

Furthermore, the court in *Russell* recognized that "... there are circumstances when the use of deceit is the only practicable law enforcement technique available." 411 U.S. at 436, 93 S.Ct. at 1644–1645, 36 L.Ed.2d at 375–376. As the court stated with respect to the illicit manufacture of drugs:

> The illicit manufacture of drugs is not a sporadic, isolated criminal incident, but a continuing, though illegal, business enterprise. In order to obtain convictions for illegally manufacturing drugs, the gathering of evidence of past unlawful conduct frequently proves to be an all but impossible task. Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation ....

411 U.S. at 432, 93 S.Ct. at 1643–1644, 36 L.Ed.2d at 373–374.

■ Consistent with the opinion in *Russell*, this Court recognizes that the infiltration by undercover police officers of an illicit operation in controlled substances is, within limits, an acceptable and often necessary police practice.

■ The doctrine of entrapment was refined by this Court in some of the more recent cases.[1] In *State v. Basham*, 159 W.Va. 404, 223 S.E.2d 53 (1976), we held in syllabus point 3 as follows:

> Where one offended against waives none of his rights, and the offender alone is responsible for the criminal intent, the nature or quality of the offense will not be affected by the fact that the party offended against connived at the offense or assisted the offender for the purpose of entrapping and convicting him of the crime.

See also *State ex rel. Taylor v. Devore*, 134 W.Va. 151, 157, 58 S.E.2d 641, 644 (1950).

---

1. This Court has decided various cases over the years involving the issue of entrapment. In earlier cases, for example, we held that when the only inducement offered by an officer to promote an illegal sale of liquor is a "willingness to buy," the doctrine of entrapment is not available to the seller. Syl. pt. 4, *State v. Bierce*, 113 W.Va. 649, 169 S.E. 478 (1933); Syl. pt. 2, *State v. Hamrick*, 112 W.Va. 157, 163 S.E. 868 (1932); Syl., *State v. Jarvis*, 105 W.Va. 499, 143 S.E. 235 (1928). In another earlier case, *State v. Piscioneri*, 68 W.Va. 76, 69 S.E. 375 (1910), we held in syllabus point 2 as follows:

Entrapment, as a defense to criminal prosecution, occurs where the design or inspiration for the offense originates with law enforcement officers who procure its commission by an accused who would not have otherwise perpetrated it except for the instigation or inducement by the law enforcement officers.

*See also* Syl. pt. 1, *State ex rel. Paxton v. Johnson*, 161 W.Va. 763, 245 S.E.2d 843 (1978).

In *Basham*, we indicated that if the proper limits of crime detection are not exceeded, it is "... perfectly proper for police officers to afford opportunities for the commission of crime without thereby prejudicing the subsequent prosecution of the person who commits the offense." 159 W.Va. 412, 223 S.E.2d at 58.

■ A leading case in this State upon the issue of entrapment is *State v. Knight*, 159 W.Va. 924, 230 S.E.2d 732 (1976). In that action, the defendant was convicted of delivery of marihuana, and we held that the defendant could assert the defense of entrapment even though he denied committing the offense, because the State injected evidence of entrapment into the case. Furthermore, in *Knight*, we held in syllabus points 3 and 4 as follows:

When the defense of entrapment is asserted, the trial court is required to submit that issue to the jury if the evidence gives rise to questions regarding the readiness of the accused to commit the offense or the extent to which a government agent or informer either induced the accused to commit the crime or afforded him opportunity to commit the crime.

A trial court may find, as a matter of law, that a defendant was entrapped, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction.

In *State v. Hinkle*, 169 W.Va. 271, 286 S.E.2d 699 (1982), this Court found entrap-

ment to exist as a matter of law. In that action, a sale of hashish by the defendant to an undercover officer was arranged by a police informant. The testimony indicated that the informant appeared at the defendant's home three or four days per week and frequently asked the defendant about drugs and whether the defendant would make a sale. The defendant rebuffed those solicitations prior to the transaction in question. The defendant contended that the informant was guilty of persistent harassment toward the defendant. The informant did not appear at the defendant's trial.

In reversing the defendant's conviction, this Court in *Hinkle* recognized, as we did in *Knight, supra*, that West Virginia has two coexistent approaches to entrapment defenses, *i.e.*, the "objective" and "subjective" tests. As this Court stated:

The 'objective' test ... prohibits conviction of a defendant, as a matter of law, when the evidence overwhelmingly shows unconscionable government conduct inducing the crime. This 'objective' approach is decided by the Court and makes a directed verdict appropriate. The 'subjective' test analyzes a defendant's predisposition to commit a crime and presents a jury question. The government must pass the objective test before the subjective test will be used.

169 W.Va. 273–274, 286 S.E.2d at 701.

In *Hinkle*, this Court held that the trial court should have directed a verdict for the defendant. As the syllabus point in that action states: "When a defendant presents evidence of police conduct amounting to entrapment, and the State fails to rebut that evidence or prove defendant's predisposition to commit the crime charged, a trial judge should direct a verdict for defendant as a matter of law."

In *State v. Maynard*, 170 W.Va. 40, 289 S.E.2d 714 (1982), this Court affirmed the defendant's conviction for the delivery of phencyclidine. In that action, the undercover officer testified that she asked the defendant if the defendant had any drugs to sell. The defendant responded in the

negative. The undercover officer subsequently asked the question again, and the defendant indicated that she would give some phencyclidine to the officer. According to the undercover officer, the defendant thereafter sold phencyclidine to the officer for $10.00. The defendant's testimony, however, contradicted that of the undercover officer. The defendant stated essentially that she refused to sell phencyclidine to the officer.

In *Maynard*, this Court stated that the critical test with respect to the defense of entrapment is "... whether the inspiration for the unlawful scheme originates with the police officers or with the accused." 170 W.Va. at 43, 289 S.E.2d at 716. In affirming the defendant's conviction, this Court concluded that inasmuch as the testimony relating to the alleged transaction was in conflict, reasonable minds could differ as to what actually occurred. We held, therefore, that it was not error for the trial court to refuse to direct a verdict for the defendant upon the issue of entrapment. 170 W.Va. at 43, 289 S.E.2d at 717.

■ In the action before this Court, the record indicates that Trooper Hylton simply asked defendant Ashworth where Hylton could acquire some drugs. Shortly thereafter, Trooper Hylton transported Ashworth and Austin to Squire where Trooper Hylton provided the purchase money for the sale. Unlike the facts in *Hinkle, supra*, there is no evidence in this action that defendant Ashworth was persistently harassed into making the illegal transaction.

We conclude, therefore, that the State satisfied the "objective" test outlined in *Hinkle* and *Knight, supra*, because the record in this action does not show unconscionable government conduct as a matter of law. Stated another way, reasonable minds could differ as to whether the action of Trooper Hylton constituted entrapment, and the trial court was correct in not directing a verdict in favor of defendant Ashworth. Thus, pursuant to the "subjective" test, the issue of entrapment was properly submitted to the jury.

**2.** Pursuant to *W.Va.Code*, 60A–2–204 [1981],

## II

Defendant Ashworth further contends that inasmuch as he was a mere go-between in the transaction in question his actions on January 12, 1981, did not constitute a crime. Specifically, Ashworth asserts that he was not a supplier of marihuana, and, therefore, his actions did not constitute a violation of *W.Va.Code*, 60A–4–401(a)(1)(ii) [1971], under which statute he was convicted. Defendant Ashworth also asserts that, in effect, he was acting under the direction of Trooper Hylton and, therefore, was immune from prosecution. We reject those assertions by defendant Ashworth. We conclude that the evidence was sufficient to sustain the verdict of the jury that defendant Ashworth was guilty of delivery of marihuana in violation of *W.Va.Code*, 60A–4–401(a)(1)(ii) [1971].

*W.Va.Code*, 60A–4–401(a)(1)(ii) [1971], provides as follows:

(a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

(1) Any person who violates this subsection with respect to:

(ii) Any other controlled substance classified in Schedule I, II, or III, is guilty of a felony and upon conviction may be imprisoned in the penitentiary for not less than one year nor more than five years, or fined not more than fifteen thousand dollars, or both. ...[2]

Furthermore, as *W.Va.Code*, 60A–1–101(f) [1981], provides: " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

■ We find nothing in the record to justify the contention of defendant Ashworth that his actions, as a matter of law, failed to constitute a crime. Nor do we find any reason to conclude that defendant Ashworth was exempt from prosecution. Rather, it is clear from a reading of *W.Va. Code*, 60A–4–401(a)(1)(ii) [1971], and *W.Va.*

marihuana is a Schedule I controlled substance.

*Code*, 60A–1–101(f) [1981], that those statutes prohibit more illicit activities than simply the activities of the principal dealer in controlled substances. Those statutes also reach the conduct of those persons in illegal transactions who physically transfer controlled substances from the dealer to another. Nor does the culpability of the person who delivers the controlled substance depend upon whether that person received compensation, pecuniary or otherwise, from the transaction. Therefore, the question of the appellant's guilt with respect to delivery of marihuana was properly submitted to the jury.

 Upon an examination of the transcript of the trial, we hold that under the circumstances of this criminal case, the evidence was sufficient to sustain the verdict of the jury that the defendant was guilty of the offense of delivery of marihuana in violation of *W. Va. Code*, 60A–4–401(a) [1971], where the evidence indicated that the defendant transferred the marihuana from a third party to an undercover police officer. Furthermore, we hold that where the evidence indicated that the defendant delivered marihuana in violation of *W. Va. Code*, 60A–4–401(a)(1)(ii) [1971], from a third party to an undercover police officer, a conviction of the defendant under that statute was proper, even though it was not shown by the evidence at trial that the defendant received compensation, pecuniary or otherwise, with respect to the transaction.

This Court is further of the opinion that all other issues raised by defendant Ashworth in this appeal are without merit. In particular, Ashworth asserts that the trial court committed error in admitting the testimony of Trooper Hylton that after the transaction in question, Ashworth indicated

that he could help Trooper Hylton obtain controlled substances in the future.[3] The trial court determined the admissibility of that testimony in an *in camera* hearing prior to its submission to the jury. We reject Ashworth's assertion that the admission of that testimony was error.

Upon all of the above, the final order of the Circuit Court of McDowell County is hereby affirmed.

Affirmed.

---

**3.** During defendant Ashworth's trial, Trooper Hylton testified as follows:

Q. Trooper Hylton, prior to the recess I asked you about a conversation in the automobile as you and Mr. Austin and Mr. Ashworth returned to War from Squire. Was there a conversation in that automobile?

A. Yes, sir. There was.

Q. And could you relate to us what that conversation was?

A. The conversation was between myself, Mr. Ashworth and Mr. Austin as we were traveling back to War. Both Mr. Ashworth and Mr. Austin advised me that if I ever wanted anything else to contact them, that the boys up in Squire wouldn't sell to anyone else besides them. If I ever wanted anything else, just get in touch with them.