# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0071**  (Harrison County 14-F-215-1)

**Mark Alan Moran,**
**Defendant Below, Petitioner**

**FILED**

**January 27, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mark Alan Moran, by counsel Sam H. Harrold III and Allison McClure, appeals the Circuit Court of Harrison County's December 14, 2015, orders denying his motion for post-verdict judgment of acquittal and motion for a new trial following his conviction for soliciting a minor via a computer. Respondent the State of West Virginia, by counsel David A. Stackpole, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 3, 2013, petitioner created an advertisement within the "casual encounters" forum of Craigslist entitled "im [sic] looking for some fun this week – m4w – 27 (buckhannon and surrounding area)." In the narrative portion of the advertisement, petitioner stated that he was "interested in a woman or women to meet with for some nsa[1] fun no restrictions on looks or age just be d/d[2] free and clean discretion is a must. . . ." An undercover police officer, Lieutenant Gary Weaver responded to the ad with a message stating the following: "yo 15 f bridgeport sayin wats up." In response, petitioner stated that he hoped the girl meant she was eighteen because he was "not going to jail over some a\*\*." However, petitioner later asked for the girl to send him a picture and he would "make the call, if you're 18 or not." When the officer did not send a picture, petitioner inquired whether the girl was still interested, and the officer responded that the girl really was fifteen. Petitioner again asked for a picture, and the officer sent two photographs of a female who was fourteen or fifteen at the time the photographs were taken. Petitioner then asked for a cell phone number, and the officer provided the same. Through texts, petitioner told

---

[1] Lieutenant Weaver testified that "nsa" stands for no strings attached.

[2] Lieutenant Weaver testified that "d/d free" stands for disease and drug free.

1

the officer that he was looking for "no-strings-attached sex" and that he was married. He also inquired as to why the girl did not go after kids from school and stated that he was very nervous because he had never "done this with a girl your age." After several other texts, petitioner asked when the girl wanted to meet and asked her not to tell anyone about him. In an e-mail, petitioner told the officer that he was going to text and ask the "girl's" age and that she was to reply that she was eighteen. Later, petitioner said that "[s]ince [the officer] replied you're 18, if I get caught, you need to say you told me you're 18 so I won't get in trouble." However, petitioner admitted in a follow up e-mail that because he was twenty-seven he could get in trouble if they had sex. After several more texts, petitioner offered to pick up the girl the next night. Petitioner asked what the girl wanted to do with him and volunteered that he had "done all different types of things sexually. I just want to have a good time. So if there's something specific you want to try, let me know."

Petitioner also texted the next day to try to set up plans to pick up the girl, telling the girl to tell her mom they were going to a movie. He asked the girl to tell the mother that he was only eighteen, and he provided a fake name. Petitioner asked if the girl could sneak out that night, and the officer replied that it would have to be after 9:00 p.m. when the mother goes to bed. Petitioner later asked if the girl could come to his house for a while or if she just wanted to "go parking." The two agreed via text messages where petitioner would pick her up, and petitioner identified his vehicle as a red truck. When Lieutenant Weaver saw a red truck pull into the appointed meeting spot, officers pulled out and stopped petitioner's vehicle. Petitioner was advised of his *Miranda* rights, and he stated that he was willing to talk to the officer.

Petitioner was placed under arrest and transported to the police department. Following the completion of the *Miranda* form, petitioner participated in a recorded interview, during which he admitted placing the Craigslist ad and to both e-mailing and texting with a person he believed to be a fifteen-year-old female. He also admitted that he planned to take the female back to his house to have sex with her. Thereafter, he was indicted on soliciting a minor via computer. He filed a motion to dismiss the indictment asserting the defense of entrapment. In a supplemental memorandum of law in support of his motion to dismiss the indictment, petitioner indicated that Dr. Clifton R. Hudson evaluated petitioner and concluded "to a reasonable degree of professional certainty that [petitioner] had no unusual psychological predisposition to commit the alleged referral offense." In response, the State argued that the issue of entrapment was a factual issue for the jury. Petitioner submitted a motion for an in camera hearing regarding the admissibility of his statements, arguing that he was diagnosed with "a concussion and facial contusion" following his arrest that showed his statement was involuntary.

The circuit court held a hearing on all pending pretrial motions on January 27, 2015. Petitioner maintains that during his arrest, officers slammed him to the ground resulting in physical injuries, including a concussion. During argument, petitioner informed the circuit court that he was attempting to obtain an expert to testify regarding a diminished capacity claim related to petitioner's statement to police based upon that concussion. On September 9, 2015, the circuit court held another pretrial motions hearing, during which it heard testimony from Lieutenant Weaver, petitioner's mother, petitioner's father, and Dr. Robert Blake related to the motions regarding the admissibility of petitioner's statement. Petitioner filed a supplemental response in opposition to the admissibility of statements he made while in custody, which

consisted of medical records.

The State filed motions in limine regarding evidence of alleged police misconduct and to prohibit Dr. Hudson from testifying regarding petitioner's mental status and predisposition to commit the offense of soliciting a minor via a computer. In support of those motions, the State argued that petitioner had not alleged any diminished capacity or insanity defense so the only purpose of Dr. Hudson's testimony would be to improperly attempt to invade the province of the jury in its fact finding role regarding petitioner's predisposition to commit the offense. The circuit court ruled on the admissibility of petitioner's statement after voir dire was completed but before opening statements, and found that the statement was admissible because the State had proven by a preponderance of the evidence that the statement was voluntarily made, there were no inducements or promises, and *Miranda* warnings had been given. It also found that the issue of whether petitioner had an injury that affected his ability to voluntarily give a statement was an issue for the jury. The circuit court denied the State's motion in limine to exclude any reference to the incident that petitioner alleged caused his injury, as petitioner claimed that officers caused his injuries during the arrest. At that point, the circuit court held in abeyance the ruling regarding the extent of the expert's testimony.

After the jury was excused on the first day of trial, the circuit court heard arguments regarding the use of petitioner's expert to testify as to predisposition. It held that the expert could not testify that in order to be predisposed there had to be a prior act because "he's basically telling us what the law should be" and that under that reasoning "everyone gets on[sic] free – one free act of attempt to solicit a minor." The circuit court further held that the expert could not testify as to the issue of whether petitioner was predisposed to commit the offense. Finally, the circuit court held that it makes the initial determination as to "whether there's enough evidence to even submit entrapment to the jury as a defense," and that "it's still up to the jury to make a factual determination, as to whether the[y] think there was inducement or not."

Petitioner presented several familial witnesses, and he was permitted to introduce photographs taken by his mother the day petitioner was released from jail. The circuit court inquired whether petitioner was going to call the expert, and petitioner indicated that he was not if he could not offer the information and opinions addressed in the expert report. Several jail, law enforcement, and medical personnel provided testimony regarding petitioner's injuries. The circuit court instructed the jury, including giving the first paragraph of petitioner's fifth jury instruction, but the circuit court denied the inclusion of the second paragraph; that instruction related to the defense of entrapment. The circuit court gave petitioner's eighth jury instruction, related to entrapment, and his sixth jury instruction, related to predisposition. The circuit court also gave an instruction it prepared regarding predisposition. During deliberations, the jury requested to review the video of petitioner's statement, and they were permitted to view the DVD without objection. The jury also requested a definition of predisposition and inquired as to whether it had to be proved in order to render a guilty verdict. The circuit court sent a copy of the instructions to the jury, and neither side objected. The jury ultimately found petitioner guilty of soliciting a minor via computer as charged in the indictment.

Petitioner filed a motion for post-verdict judgment of acquittal and motion for a new trial. On December 14, 2015, the circuit court held a hearing on post-trial motions, at which time it

denied petitioner's motions. On that same date, the circuit court sentenced petitioner to a term of incarceration of two to ten years but suspended the sentence to allow petitioner to serve his time through home confinement. This appealed followed.

On appeal, petitioner asserts four assignments of error. Because the issues have a great deal of overlap and petitioner argued them together, we will address his first two assignments of error together. First, he contends that the circuit court erred by refusing to issue his proposed jury instruction regarding predisposition. He then argues that the circuit court erred by creating its own jury instruction that did not properly instruct the jury as to predisposition as it relates to the defense of entrapment. Petitioner points to the circuit court's finding in its order denying petitioner's motion to dismiss that although competent evidence exists that petitioner was induced by the State, there was still a question of fact regarding his predisposition to commit the offense as charged in the indictment. He argues that because the circuit court previously found that petitioner met his burden of proof regarding inducement, the State had the burden to show predisposition. Therefore, he contends that the circuit court should not have instructed the jury that it needed to first find that petitioner was induced. Petitioner asserts that the jury should have been instructed that his predisposition must be proven beyond a reasonable doubt by the State through evidence prior to the first contact with the officer. As part of this argument, petitioner asserts that the jury could not draw the correct legal conclusions based upon the facts due to the improper instructions by the circuit court.

This Court has previously stated that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). Further, we have held that

> "[a] trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense." Syl. Pt. 11, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994).

Syl. Pt. 3, *State v. Brock*, 235 W.Va. 394, 774 S.E.2d 60 (2015). While the circuit court determined prior to trial that competent evidence existed that petitioner was induced by the State, there was still a question of fact as to disposition, it appears that the circuit court was simply stating in its prior order that there was sufficient evidence to allow petitioner to argue entrapment, while both entrapment and predisposition were issues to be determined by the jury. This Court has held that while the issue of a defendant's predisposition to commit a crime is usually reserved for the jury, a trial court "may enter a judgment of acquittal if the State fails to rebut the defendant's evidence of inducement, or fails to prove the defendant's predisposition to commit the offense charged beyond a reasonable doubt." Syl. Pt. 5, in part, *State v. Houston*, 197 W.Va. 215, 475 S.E.2d 307 (1996) (quoting Syllabus, *State v. Hinkle*, 169 W.Va. 271, 286 S.E.2d 699 (1982) (overruled on other grounds as set forth in syllabus points 1 and 2, *Houston* at 218, 475 S.E.2d at 310)).

4

The instruction given by the circuit court was the following:

The Court instructs the jury that predisposition is defined as the defendant's inclination to engage in a crime for which he was charged measured before his initial exposure to government agents. Evidence of predisposition may consist of showing the defendant's eagerness to participate in the transaction and/or his ready response to the government's inducement offer. However, the jury should consider all of the evidence presented by both the State and the defendant in determining whether the State has proven beyond a reasonable doubt the defendant's predisposition to commit the crime, if you first find the defendant was induced by the government to commit the crime.

As this Court previously recognized, "the theory central to the defense of entrapment is the defendant's predisposition to commit the crime." *Houston* at 222, 475 S.E.2d at 314.[3]

---

[3] By contrast, the jury instruction proposed by petitioner is the following, taken largely from a footnote in *State v. Taylor*, 175 W.Va. 685, 337 S.E.2d 923 (1985):

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law, as a matter of policy, forbids his conviction in such a case. On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that government agents provided what appears to be a favorable opportunity is not entrapment. If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as are charged in the indictment, whenever opportunity was afforded, and that government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment. On the other-hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit an offense of the character charged, apart from the inducement or persuasion of some officer or agent of the government, then it is your duty to find him not guilty.

In *Taylor*, we stated that the instruction "appears to be widely accepted as a correct and complete statement of the law." *Id.* at 688, 337 S.E.2d at 926. Petitioner's second proposed instruction related to entrapment begins with a recitation of syllabus point four of *Houston*, wherein this Court stated that

[w]hen the defendant invokes entrapment as a defense to the commission of a crime, the defendant has the burden of offering some competent evidence that the government induced the defendant into committing that crime. Once the defendant has met this burden of offering some competent evidence of inducement, the burden of proof then shifts to the prosecution to prove beyond a

(continued . . .)

5

> Because the State bears the burden of proving the defendant's predisposition to commit the offense, the defendant's challenge, in essence, strikes at the sufficiency of the State's evidence on the issue of predisposition. . . . Upon review, then, we will examine the evidence in the light most favorable to the prosecution, and will reverse only if no rational trier of fact could have found predisposition to exist beyond a reasonable doubt.

*Houston* at 229, 475 S.E.2d at 321. While respondent's proposed jury instructions on these issues stem from correct statements of the law, considering the jury instructions as a whole and considering the predisposition evidence in the light most favorable to the State, we find that the circuit court did not err in refusing to give petitioner's requested jury instruction or in giving the instruction set forth hereinabove. The instruction given by the circuit court was also a correct statement of the law, and it more accurately reflected the circuit court's prior rulings. Further, we find that a rational trier of fact could find predisposition to exist beyond a reasonable doubt. Therefore, we find that there is no merit to petitioner's first and second assignments of error.

Petitioner's third assignment of error is that the circuit court erred in granting the State's motion in limine prohibiting the presentation of the entirety of Dr. Hudson's testimony. He argues that Dr. Hudson's specialized knowledge would have assisted the jury in understanding the factors that lend it to find a defendant had a predisposition to solicit a minor. Further, he contends that simply because Dr. Hudson would have opined that petitioner was not predisposed to the alleged crime, he would not have usurped any authority from the province of the jury. Instead, he suggests that the circuit court could have addressed its concerns by instructing the jury on the scope of expert testimony. He also challenges the timeliness of the State's motion, which was filed shortly before trial.

This Court has long-held that "'[t]he admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong.' Syllabus point 6, *Helmick v. Potomac Edison Co.,* 185

---

reasonable doubt that the defendant was otherwise predisposed to commit the offense.

The remainder of his proposed instruction was the following:

> In this case, the Court instructs the jury that it has made a finding that MARK MORAN has offered competent evidence that Lt. Gary Weaver induced him into the crime charged. Therefore, the State must prove beyond a reasonable doubt that MARK MORAN was predisposed to commit the offense of Soliciting a Minor via Computer to be found guilty.

Finally, he asked that the circuit court provide the instruction that "the predisposition of MARK MORAN must be proven beyond a reasonable doubt by the State through evidence prior to MARK MORAN first being contacted by Lt. Gary [Weaver]."

6

W.Va. 269, 406 S.E.2d 700 (1991)." Syl. Pt. 2, *State v. Dunn*, 237 W.Va. 155, 786 S.E.2d 174 (2016). We begin by noting that the question of whether Dr. Hudson is qualified as an expert under Rule 702 of the West Virginia Rules of Evidence is not before us. Further, as set forth above, Dr. Hudson's proposed testimony was not excluded in its entirety, but his testimony was limited. Specifically, the circuit court found that Dr. Hudson could not testify that in order to be predisposed there had to be a prior act because he was testifying as to the law and that under that reasoning "everyone gets on free – one free act of attempt to solicit a minor." With regard to expert testimony, this Court has stated as follows:

> As a general rule, an expert witness may not give his [or her] opinion on a question of domestic law [as opposed to foreign law] or on matters which involve questions of law, and an expert witness cannot instruct the court with respect to the applicable law of the case, or infringe on the judge's role to instruct the jury on the law. So an expert may not testify as to such questions of law as the interpretation of a statute . . . or case law . . . or the meaning of terms in a statute . . . or the legality of conduct.
>
> 32 C.J.S. *Evidence* § 634, at 503–04 (1996) (footnotes omitted). *See also* John W. Strong, *McCormick On Evidence,* Vol. 1 § 12, p. 53 (1999) (stating that "[r]egardless of the rule concerning admissibility of opinion upon ultimate facts, at common law[,] courts do not allow opinion on a question of law, unless the issue concerns foreign law." (Footnotes omitted.)).

*Jackson v. State Farm Mut. Auto. Ins. Co.,* 215 W.Va. 634, 643, 600 S.E.2d 346, 355 (2004).

In the instant matter, the circuit court properly considered the substance of Dr. Hudson's proposed testimony and determined that that testimony would not only instruct on the law but would provide improper instruction as to the law. With regard to his contention that the State's motion in limine was not timely filed, petitioner has failed to point this Court to the location in the record where he objected below. While he implies that he was not given the opportunity to object prior to the entry of the circuit court's order regarding the motion in limine, he could have submitted an objection at any point prior to or during trial, yet it does not appear that he did so. Because petitioner failed to object below, he has waived any argument regarding the timeliness of the filing of the State's motion in limine.[4] Based on the record before this Court, we cannot conclude that the circuit court was clearly wrong in limiting Dr. Hudson's testimony. It was petitioner's decision then not to offer any testimony from Dr. Hudson.

Petitioner's final assignment of error on appeal is that the circuit court erred in denying his motion to suppress his recorded statement. He contends that the State has the burden of proving by a preponderance of the evidence that statements of the accused are voluntarily given before the same may be admitted into evidence in a criminal case. Petitioner asserts that he was

---

[4] "[T]he raise or waive rule . . . prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error . . . ." *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996).

"slammed" to the ground during his arrest, resulting in a concussion and facial contusions. Because he gave a recorded statement shortly after his arrest, he argues that the officers' actions impacted his ability to think clearly and process information, leaving him unable to voluntarily waive his Fifth Amendment rights. He is critical of the circuit court's decision to allow the jury to determine the admissibility of the statement.

> By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995) (footnote omitted). In support of his contention that law enforcement officers slammed him to the ground causing a concussion, petitioner points to "Receiving Screening/Health Assessment," which appears to have been completed by a medical assistant on August 6, 2013. The form shows that petitioner was oriented to time, place, and person and that his perception and thought processes were appropriate. Further, it shows that petitioner's behavior was appropriate and he had good eye contact. The only indication of any alleged injury at that time was the note of abrasions on his right cheek. On a flow sheet completed jointly by two medical assistants and a licensed practical nurse, one medical assistant recorded petitioner's claim that an arresting officer slammed him to the ground and that he felt sick to his stomach and dizzy. However, petitioner denied the need for medical treatment at that time. It appears that, upon his release, he was instructed to follow up with his family doctor or go to the emergency room for any injury to his right ear. While the records show that he complained of dizziness and feeling sick to his stomach, all indications were that he was oriented and behaving normally. There was no mention of issues with speech or thought processes. It is important to note, however, that the complaints of ear pain and dizziness did not occur until the morning after the arrest. Lieutenant Weaver also testified that he did not recall seeing any injuries on petitioner, that petitioner's responses were appropriate, and that petitioner did not seem disoriented or incoherent.

The circuit court denied the State's motion in limine to exclude evidence related to alleged police misconduct during petitioner's arrest, so the jury heard testimony regarding the alleged slamming of petitioner's head to the ground during his arrest. The jury was free to consider petitioner's claimed injuries at the time he gave his statement to police. Based on the medical records and testimony contained in the record before this Court, considering the evidence in the light most favorable to the prosecution, we find that the circuit court's denial of petitioner's motion to suppress his statement was not clearly erroneous.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  January 27, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

9